```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
KALI CLARK,                              : 11 Civ. 1307 (BSJ) (JCF)
                                         :
            Plaintiff,                   :      REPORT AND
                                         :      RECOMMENDATION
    - against -                          :
                                         :
GOTHAM LASIK, PLLC, BRIAN BONANNI,       :
M.D. and CHRISTOPHER COFFEE,             :
                                         :
                                         :
            Defendants.                  :
- - - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:

The plaintiff in this action, Kali Clark, seeks enforcement of a settlement agreement that she allegedly entered into with the defendants, Gotham Lasik Vision Center LLC ("Gotham Lasik"), Brian Bonanni, M.D., and Christopher Coffee. The settlement discussions occurred at a court-ordered mediation conducted by a private mediator. The defendants contend that they never agreed to the terms now proposed by Ms. Clark, that they agreed to settle only in principle, and that any oral indication of agreement by them is unenforceable. For the reasons set forth below, I recommend that the plaintiff's motion be denied.

Background

Ms. Clark originally filed suit on February 24, 2011, against her employer, Gotham Lasik, and its owners, Dr. Bonanni and Mr. Coffee. Ms. Clark alleged that the defendants violated the New

1

York City Human Rights Law by failing to accommodate her disability and by wrongfully terminating her on account of that disability. (Complaint ("Compl."), ¶ 1).  The case is in federal court based on diversity.  On April 18, 2011, the parties were ordered to participate in the Court's mandatory mediation program for employment discrimination cases (Order of Automatic Referral to Mediation filed April 18, 2011; Affirmation of O. Iliana Konidaris dated Aug. 22, 2011 ("Konidaris Aff."), ¶ 4), and on June 30, 2011, they attended a mediation session presided over by Hillary Miller, a volunteer mediator.  Present at the session were the plaintiff and the plaintiff's attorneys, Jason Solotaroff and Iliana Konidaris.  Also present were the defendant Dr. Bonanni, and counsel for both defendants, Ernest Stolzer and Amy Culver of the firm Bond, Schoeneck & King, PLLC.  The other defendant, Mr. Coffee, was not at the session. (Declaration of Christopher Coffee dated Sept. 23, 2011 ("Coffee Decl."), attached as Exh. 2 to Defendants' Memorandum of Law ("Def. Memo."), ¶¶ 3, 5; Konidaris Aff., ¶ 5).

After several hours of mediation, a settlement was proposed pursuant to which the defendants would pay Ms. Clark $40,000. Payment was to be made in three installments of $13,333.33 each on or before August 1, November 1, and December 31, 2011.  The plaintiff states that the proposal also included provisions that

2

any late payment would render the entire $40,000 due immediately, that the parties would exchange full and unconditional releases, and that Dr. Bonanni would confirm Ms. Clark's employment to prospective employers.  Ms. Clark claims that, in the presence of Mr. Miller, the parties carefully reviewed the settlement and the defendants orally agreed to it.  (Konidaris Aff., ¶¶ 6, 7).

     The defendants assert that at the June 30 mediation session Dr. Bonanni agreed in principle to settle the case for $40,000.  In addition, he would confirm Ms. Clark's employment to prospective employers, and she would be deemed to have resigned on December 1, 2010.  According to the defendants, mutual releases were never discussed or agreed to.  The defendants contend that Mr. Coffee never agreed to the proposed settlement because he was not present at the mediation session.  (Declaration of Brian Bonanni dated Sept. 23, 2011 ("Bonanni Decl."), attached as Exh. 1 to Def. Memo., ¶¶ 4-6; Coffee Decl., ¶¶ 3, 5; Def. Memo. at 5-6).

     At the conclusion of the mediation session, the attorneys for both sides agreed that defendants' counsel would prepare the first draft of a settlement agreement.  (Konidaris Aff., ¶ 8; Bonanni Decl., ¶ 9). On July 15, 2011, Ms. Konidaris informed the Court by letter that the parties had settled the case, and on July 19, 2011, the Court issued an order discontinuing the action, provided that either party could move to restore the action within 30 days if

settlement had not been consummated. (Order dated July 19, 2011; Konidaris Aff., ¶ 9). On July 26, 2011, Ms. Culver, defendants' counsel, provided a draft of the settlement agreement to Ms. Konidaris. (Konidaris Aff., ¶ 10). On July 29, 2011, Ms. Konidaris sent back an edited version of the agreement. (Konidaris Aff., ¶ 11).

On August 2, 2011, Ms. Konidaris sent an e-mail to Ms. Culver asking that Dr. Bonanni fill out a form that Ms. Clark needed in connection with a pending job offer. Shortly thereafter Dr. Bonanni provided a completed form as requested. (Reply Memorandum of Law at 3 & n.3; Affirmation of Jason Solotaroff dated Sept. 30, 2011 ("Solotaroff Aff."), ¶ 4 & Exhs. 3-4). At this time, the defendants were seemingly still reviewing the edits to the settlement agreement proposed by the plaintiff.

On August 18, 2011, the defendants' attorneys informed Ms. Konidaris that they were no longer willing to enter into the settlement as discussed on June 30. Instead, they stated that the most Dr. Bonanni was willing to pay Ms. Clark was $12,000, and that Mr. Coffee intended to file a harassment lawsuit against Ms. Clark. (Konidaris Aff., ¶ 12).

Accordingly, on August 23, 2011, the plaintiff brought the current motion. She seeks an order (1) enforcing the settlement allegedly agreed to by the parties at the court-ordered mediation,

(2) entering judgment against the defendants pursuant to the terms of the settlement agreement, (3) awarding her the attorneys' fees and costs she has incurred in connection with this motion, and (4) imposing sanctions against the defendants. (Notice of Motion dated Aug. 22, 2011).

Discussion

    A.    Standard for Enforcing an Oral Settlement

The plaintiff asks the Court to hold that the oral representations made by the defendants at the mediation session constitute a binding agreement. No mutually agreed upon writing bearing the signatures of both parties has been submitted as evidence that the defendants entered into a settlement. When determining if a settlement agreement is binding, whether it was reduced to writing or made orally, the burden lies with the party seeking enforcement. "'A party seeking to enforce a purported settlement agreement has the burden of . . . demonstrat[ing] that the parties actually entered into such an agreement.'" Min v. Target Stores, 553 F. Supp. 2d 218, 221 (E.D.N.Y. 2008) (alterations in original) (quoting Benicorp Insurance. Co. v. National Medical Health Card Systems, Inc., 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006)).

    In Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2d Cir. 1985), the Second Circuit laid out several factors to be

addressed in determining whether parties intended to be bound by an agreement in the absence of a document executed by both sides. "The Court is to consider: (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing. Id. at 80; accord Powell v. Omnicom, BBDO/PHD, 497 F.3d 124, 129 (2d Cir. 2007); Abel v. Town Sports International Holdings, Inc., No. 09 Civ. 10388, 2010 WL 5347055, at *4 (S.D.N.Y., Dec. 23, 2010). I will address each factor in turn.

    1.   Reservation Not to Be Bound

Neither of the two versions of the settlement agreement -- the plaintiff's draft or the defendants' draft -- contains an express right not to be bound until the executtion of a written agreement. Likewise, neither party has indicated that they discussed a right not to be bound in the absence of a writing during the mediation session. The absence of such an express reservation weighs in favor of finding the oral agreement enforceable. However, discussion by parties of the need for a formal settlement agreement and subsequent negotiations regarding the terms of the agreement "approach an express reservation of the right not to be bound until

6

a written settlement agreement was executed." Abel, 2010 WL 5347055, at *5.  Here, the exchanging of drafts subsequent to the mediation session undercuts any inference of an intent to be bound orally.

### 2. Partial Performance

With respect to the second factor, the plaintiff claims that Dr. Bonanni partially performed the agreement by providing a neutral reference to a prospective employer.  The plaintiff, however, has not shown that this was done in compliance with the settlement agreement rather than in the normal course of Dr. Bonanni's activities as an employer.

### 3. Agreement on All Terms

Although the defendants acknowledge that they had reached an oral agreement "in principle," this is of little significance, for it "is convention . . . in contract negotiation to use the words 'agreement in principle' to describe the circumstance wherein the negotiations have reached a common understanding on fundamental terms of a proposed contract, but have not resolved all details and have not made a legally binding commitment." Henchman's Leasing Corp. v. Condren, No. 87 Civ. 6478, 1989 WL 11440, at *4 (S.D.N.Y. Feb. 8, 1989).  Instead, the parties' exchange of drafts on July 26 and 29 indicates that they had not yet agreed to the terms of the settlement.  "'[E]ven "minor" or "technical" changes arising from

negotiations over the written language of an agreement can weigh against a conclusion that the parties intended to be bound absent a formal writing.'" Abel, 2010 WL 5347055, at *5 (quoting Powell, 497 F.3d at 130). And the terms that were still being debated here included some that were clearly significant, such as whether there would be an exchange of mutual releases. The lack of complete agreement on all of the terms, including some highly material terms, weighs against finding that the purported settlement agreement should be enforced.

    4.   Agreement Traditionally Reduced to Writing

The fourth Winston factor is whether the agreement at issue is of a type that is usually committed to writing.

> [A] settlement of an employment discrimination claim is customarily reduced to writing, particularly when the terms of the settlement have not been announced on the record in open court. . . . Additionally, a settlement "containing perpetual rights" like those here, including "how future requests for employee references would be handled, prohibiting the plaintiff from reapplying for employment with the defendant, and imposing confidentiality requirements" are normally put in writing when not placed on the record in open court.

Abel, 2010 WL 5347055, *5 (citations omitted) (quoting Powell, 497 F.3d at 130-31).

In this case, as in Abel and Powell, the agreement in principle made provision for employee references, a prohibition on reemployment, and confidentiality. Furthermore, it had additional

8

attributes that would normally be associated with a written memorialization. It required three payments of over ten thousand dollars at three specified dates over a period of several months, and it contained an acceleration clause triggered by the failure to make timely payments.

Finally, Section 2104 of the New York Civil Practice Law and Rules ("CPLR") supports the proposition that an agreement such as the one at issue here is generally reduced to writing. That section provides:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered. With respect to stipulations of settlement and notwithstanding the form of the stipulation of settlement, the terms of such stipulation shall be filed by the defendant with the county clerk.

CPLR § 2104.

District courts in this circuit are divided over whether CPLR 2104 is binding in federal court, even in diversity cases such as this. Compare Kingvision Pay-Per-View Corp. v. Keane, No. 02 CV 5173, 2006 WL 1704474, at *2 n.1 (E.D.N.Y. June 16, 2006) (applying CPLR 2104 in federal question case), Rosenberg v. Inner City Broadcasting Corp., No. 99 Civ. 9579, 2001 WL 995349, at *2 (S.D.N.Y. Aug. 30, 2001) (same), Turk v. Chase Manhattan Bank USA, NA, 00 Civ. 1573, 2001 WL 736814, at *1-2 (S.D.N.Y. June 11, 2001)

(same); Pretzel Time, Inc. v. Pretzel International, Inc., No. 98 Civ. 1544, 2000 WL 1510077, at *5 (S.D.N.Y. Oct. 10, 2001) (applying CPLR 2104 in diversity case), In re Complaint of High Stakes Fishing, Inc., No. 93 Civ. 7969, 1997 WL 187354, at *3 & n.1 (S.D.N.Y. April 15, 1997) (applying CPLR 2104 in admiralty case), and Sears, Roebuck & Co. v. Sears Realty Co., 932 F.Supp. 392, 401-03 (N.D.N.Y. 1996) (applying CPLR 2104 in federal question case), with Lee v. Hospital for Special Surgery, No. 09 Civ. 1117, 2009 WL 2447700, at *2 (S.D.N.Y. Aug. 10, 2009) (refusing to apply CPLR 2104 in federal question case) and Grupo Sistemas Integrales De Telecommunicacion S.A. De C.V. v. AT&T Communications, Inc., No. 92 Civ. 7862, 1994 WL 463014, at *3 n.1 (S.D.N.Y. Aug. 24, 1994) (refusing to apply CPLR 2104 in diversity case).  The Court of Appeals has alluded to this issue but has not decided it.  See Monaghan v. SZS 33 Associates, L.P., 73 F.3d 1276, 1283 n.3 (2d Cir. 1996).  ("We assume, without deciding, that New York law provides the rule of decision for determining the validity of the oral settlement agreement.  The agreement may constitute a procedural matter governed by federal law."); Massie v. Metropolitan Museum of Art, 651 F. Supp. 2d 88, 92 (S.D.N.Y. 2009). ("The Second Circuit has left open the question of whether state or federal law controls the enforcement of oral settlement agreements, whether in federal question or diversity cases.").

10

If CPLR 2104 were binding here, then the agreement would be unenforceable because it was not entered in to in open court, embodied in a writing executed by the defendants, or incorporated in a court order.  Indeed, the New York Court of Appeals has indicated that CPLR 2104 should be strictly enforced according to its terms.

> To allow the enforcement of unrecorded oral settlements would invite an endless stream of collateral litigation over the settlement terms. This would run counter not only to the statute, which on its face admits of no exceptions, but also to the policy concerns of certainty, judicial economy, flexibility to conduct settlement negotiations without fear of being bound by preliminary offers and the prevention of fraud.

Bonnette v. Long Island College Hospital, 3 N.Y.3d 281, 286, 785 N.Y.S.2d 738, 740-41 (2004).

But even if CPLR 2104 is not controlling, it is relevant to the fourth Winston factor:  it illustrates that the settlement agreement here is of the type usually committed to writing.  See Langreich v. Gruenbaum, 775 F. Supp. 2d 630, 635, 637 (S.D.N.Y. 2011) (considering CPLR 2104 in connection with the fourth Winston factor and noting that "federal courts in the Second Circuit regularly apply New York law, observing that there is no meaningful substantive difference between federal and New York law with regard to enforceability.").

The Winston factors thus militate in favor of declining to

enforce the parties' agreement in principle. Nonetheless, the plaintiff relies on Lee to argue that the oral agreement reached at the mediation session is binding and enforceable. (Plaintiff's Memorandum of Law at 4). In Lee, an employment discrimination action, the parties agreed to enter into mediation. Lee, 2009 WL 2447700, at *1. After a day of negotiations, the plaintiff agreed to settle the case. Id. The court found that, "[a]fter the [p]arties agreed to these terms, [the mediator] brought both parties (including the Plaintiff) into a conference room [and] . . . expressly confirmed . . . that the agreement reached at the Mediation was binding and enforceable, notwithstanding the fact that the agreement had not yet been reduced to writing, and [the mediator] again reviewed the terms." Id. (second and fifth alterations and second ellipsis added). Subsequently, the plaintiff changed her mind and decided she wished to proceed with the lawsuit. Id. She did not deny that an oral settlement agreement had been reached and that those terms were binding and enforceable. Id. Accordingly, the court held that the plaintiff's agreement to settle amounted to a binding legal obligation. Id. at *2. By contrast, in the present action, the defendants do not agree that the terms reached at the mediation session were binding and enforceable, and Ms. Clark has produced no affirmation from the mediator representing that the parties confirmed a complete

agreement in his presence. <u>Lee</u> therefore carries little weight in this case, and the agreement in principle here is not enforceable.

B.  <u>Fees and Sanctions</u>

Because the agreement cannot be enforced, the plaintiff's applications for an award of attorneys' fees and costs and imposition of sanctions against the defendants should be denied.

<u>Conclusion</u>

For the reasons set forth above, the plaintiff's motion should be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Barbara S. Jones, Room 1920, and to the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

                Respectfully submitted,

                *[signature: James C. Francis IV]*
                JAMES C. FRANCIS IV
                UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          March 2, 2012

Copies mailed this date:

Jason L. Solotaroff, Esq.
O. Iliana Konidaris, Esq.
Giskan Solotaroff Anderson & Stewart LLP
11 Broadway, Suite 2150
New York, New York 10004

Jason A. Nagi, Esq.
Polsinelli Shughart PC
7 Penn Plaza, Suite 600
New York, New York 10001