UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
KALI CLARK,                         : 11 Civ. 1307 (LGS) (JCF)
                                    :
            Plaintiff,              :       REPORT AND
                                    :       RECOMMENDATION
      - against -                   :
                                    :
GOTHAM LASIK, PLLC, BRIAN BONANNI,  :
M.D. and CHRISTOPHER COFFEE,        :
                                    :
                                    :
            Defendants.             :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LORNA G. SCHOFIELD, U.S.D.J.:

     This is an action brought pursuant to the New York City Human

Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.  The

plaintiff, Kali Clark, alleges that the defendant, Gotham Lasik,

PLLC ("Gotham"), failed to accommodate her disability and

wrongfully terminated her on account of that disability.[1]  Ms.

Clark seeks back pay, front pay, attorneys' fees, and punitive

damages.

     Because Gotham failed to appear by counsel, as is required of

every corporate party, the Honorable Lorna G. Schofield, U.S.D.J.,

entered a default judgement and referred the case to me to conduct

an inquest on damages.  Although notice was sent to Gotham, the

_____

     [1] The plaintiff initially included Gotham's owners, Dr. Brian
Bonanni and Christopher Coffee, as defendants.  These defendants
have been dismissed from the action.  (Memorandum Endorsement dated
April 30, 2013; Order dated May 14, 2013).

1

defendant did not appear at the hearing on June 12, 2013. Accordingly, the following findings are based on the allegations of the Complaint and the evidence presented by the plaintiff.

Background

Gotham is a New York professional limited liability corporation, with offices in Manhattan. (Complaint ("Compl."), ¶ 8). Gotham specializes in LASIK and other laser procedures designed to correct a person's vision. (Compl., ¶ 9). Dr. Brian Bonnani is a part-owner of Gotham, serves as its ophthalmologist and surgeon, and manages its operations. (Compl., ¶ 10). Christopher Coffee is also an owner of Gotham and co-manages Gotham's operations and employees. (Compl., ¶¶ 11-12).

The plaintiff began her employment at Gotham in September 2007 as a full-time technician. She earned $55,000 per year, receiving a raise approximately six to eight months after she started her job. (Compl., ¶ 13). In September 2009, her hours were reduced due to financial difficulties that Gotham was experiencing, and her salary was reduced commensurately. (Tr. at 6).[2] In March 2010, Ms. Clark was restored to a full-time position at approximately $55,000 per year. (Compl., ¶ 15).

In July 2010, the plaintiff began seeing a psychiatrist and

---

[2] "Tr." refers to the transcript of the June 12, 2013, hearing.

was diagnosed with manic-depressive disorder. (Compl., ¶ 16).  She
was also found to suffer from anxiety, attention deficit disorder,
depression, and obsessive compulsive disorder. (Tr. at 9).  As a
result, she was prescribed Wellbutrin, Adderall, and Valium. (Tr.
at 9).  Shortly after she received her diagnosis and was
hospitalized for anxiety in August 2010, Ms. Clark discussed her
mental illness and medications with Dr. Bonnani. (Tr. at 9).
Because stress aggravated her condition, Ms. Clark requested that
Dr. Bonnani and Mr. Coffee refrain from raising their voices or
being excessively aggressive when speaking to her. (Tr. at 10-11).
Nevertheless, Mr. Coffee continued to lose his temper and shout at
the plaintiff. (Tr. at 12).

On December 1, 2010, Ms. Clark met with a pharmaceutical
representative who had come to meet Gotham's skin care technician.
(Tr. at 12).  Mr. Coffee became extremely upset at what he
perceived to be Ms. Clark's overstepping of her job duties. (Tr.
at 12).  Due to Mr. Coffee's aggressive reaction, Ms. Clark became
upset and asked to take a break to call her doctor, but Mr. Coffee
refused. (Tr. at 12-13).  Instead, he called Ms. Clark "insane"
and "crazy," stated, "I'm not going to walk on eggshells . . . like
everyone else around here," and fired her. (Compl., ¶ 20).  The
next day, Ms. Clark spoke with Dr. Bonanni, who confirmed that she
had been terminated. (Tr. at 13).  He gave her severance and COBRA

documents, which she refused to sign. (Tr. at 14; Pl. Exhs. 3-4).[3]

Despite Ms. Clark's efforts to secure work after her termination, she remained unemployed until August 2011. (Tr. at 15-16; Pl. Exh. 5)). At that time, she was hired as an ophthalmic technician by OptiCare, an eye care service provider in Waterbury, Connecticut, at a salary of $37,000.00 per year. (Tr. at 15; Pl. Exh. 6)). She left OptiCare in January 2013 to care for her newborn baby and did not return to work there, purportedly because her salary would have been offset by childcare expenses. (Tr. at 18). She alleges that she would have returned to work for the salary she had received at Gotham. (Tr. at 18).

Discussion

A. Jurisdiction

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), which confers jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000. The plaintiff is a Connecticut resident and the defendant is a New York corporation. (Compl., ¶¶ 1, 4). Here, the amount in controversy exceeds the statutory threshold, as the plaintiff seeks to recover $69,667.00 in back pay, $56,172.00 in fees, and $873.97 in costs. The plaintiff also seeks front pay and

---

[3] "Pl. Exh." refers to exhibits presented by the plaintiff at the July 12, 2013 hearing.

punitive damages, in an amount to be determined by the Court.   The Court has personal jurisdiction over the defaulting defendant, Gotham, because it is a New York professional limited liability corporation doing business in New York.   N.Y. Civ. Prac. L. & Rules § 302; Recurrent Capital Bridge Fund I, LLC v. ISR Systems and Sensors Corp., 875 F. Supp. 2d 297, 303-04 (S.D.N.Y. 2012) ("When a federal district court sits in diversity, personal jurisdiction is determined by the law of the state in which the district court sits." (internal quotation marks omitted)).

    B. Liability

Following a default, all factual allegations in the plaintiff's complaint, except those relating to damages, must be accepted as true.   Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (holding that the court must "accept[] as true all of the factual allegations of the complaint."). At an inquest, the plaintiff is also "entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp., 653 F.2d at 65.   However, "a district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action." Id.

Here, the allegations and the plaintiff's testimony establish violations of the NYCHRL.  The law provides that it is an unlawful discriminatory practice

> [f]or an employer or an employee or an agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

N.Y.C. Admin. Code § 8-107(1)(a).  In order to establish a prima facie case of discrimination, the plaintiff must meet the same requirements as in a Title VII claim.  Farias v. Instructional Systems, Inc., 259 F.3d 91, 98 (2d Cir. 2001) (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000)).  She must show (1) membership in a protected class; (2) satisfactory job performance; (3) termination or other adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  See Farias, 259 F.3d at 98.

Section 8-102(16)(a) of the NYCHRL defines "disability" as "any physical, medical, mental or psychological impairment, or a history or record of such impairment."  Here, there is no dispute that the plaintiff is disabled under the NYCHRL, as she testified that she was diagnosed with several mental illnesses and was

prescribed medications accordingly.   She performed her job satisfactorily, as demonstrated by her restoration to a full-time position when the company achieved financial stability in March 2010. (Tr. at 6; Pl. Exh. 1).  In December 2010, four months after Ms. Clark had notified Mr. Coffee of her disability, Mr. Coffee was openly hostile to her, calling her "insane" and "crazy." (Tr. at 13).  Furthermore, moments before firing her, Mr. Coffee stated that he was "not going to walk on eggshells . . . like everyone else around here." (Compl., ¶ 20).  The termination of Ms. Clark immediately after these comments provides a basis from which the fact-finder could conclude that the plaintiff was subjected to an adverse employment action because of her disability, thus establishing liability.[4]

C. <u>Damages</u>

A prevailing plaintiff in an NYCHRL action may recover damages, including punitive damages, attorneys' fees and costs, and "such other remedies as may be appropriate." N.Y.C. Admin. Code § 8-502(a), (f).  Here, Ms. Clark seeks back pay, front pay, punitive damages, and attorneys' fees and costs.

---

[4] Because Ms. Clark has provided sufficient evidence to show that she was terminated as a result of her disability in violation of the NYCHRL, her claim arising from the defendants' alleged failure to provide her with a reasonable accommodation need not be addressed.

1. <u>Back Pay</u>

The purpose of awarding damages in employment discrimination cases is to make the victim whole. <u>Saulpaugh v. Monroe County Hospital</u>, 4 F.3d 134, 145 (2d Cir. 1993). The standards for awarding damages under the NYCHRL are identical to the standards used in Title VII discrimination cases. <u>See</u> <u>Becerril v. East Bronx NAACP Child Development Center</u>, No. 08 Civ. 10283, 2009 WL 2611950, at *3 (S.D.N.Y. Aug. 18, 2009) (citing <u>Shannon v. Fireman's Fund Insurance Co.</u>, 136 F. Supp. 2d 225, 228 n.4 (S.D.N.Y. 2001)).

When Ms. Clark was terminated, she was earning an estimated annual salary of $52,000.00 per year, with an average monthly commission of $400.00. (Tr. at 16; Pl. Exh. 1). Therefore, her annual salary was $56,800.00 per year ($52,000.00 + ($400.00 x 12 months)), equivalent to $4,733.33 per month. Eight months elapsed from the date of her termination until she obtained employment at OptiCare on August 1, 2011. Accordingly, Ms. Clark should be awarded $37,866.67 for the period that she was unemployed ($4,733.33/month x 8 months).

At OptiCare, Ms. Clark earned an annual salary of $37,000.00 (Tr. at 15), equivalent to $3,083.33 per month. The difference between her monthly earnings at Gotham and at OptiCare was $1,650.00. From August 1, 2011 to April 24, 2013, the date of the default judgment, 633 days elapsed, for a total of 20.81 months.

Therefore, she would have earned an additional $34,336.50 ($1,650.00/month x 20.81) had she remained employed at Gotham. Accordingly, Ms. Clark should be awarded a total of $72,203.17 ($37,866.67 + $34,336.50) in back pay.

While Ms. Clark earned $14,750.00 in unemployment benefits (Tr. at 18), deduction of this amount is not warranted. <u>Becerril</u>, 2009 WL 2611950, at *4 (citing <u>Shannon</u>, 136 F. Supp. 2d at 232 (holding that when employer unlawfully terminates employee, unemployment benefits should not be deducted)).

       2. <u>Front Pay</u>

Front pay, which is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement," <u>Pollard v. E.I. du Pont de Nemours & Co.</u>, 532 U.S. 843, 846 (2001), "is not mandatory and it is within the court's discretion to award," <u>Whitten v.Cross Garage Corp.</u>, No. 00 Civ. 5333, 2003 WL 21744088, at *4 (S.D.N.Y. July 9, 2003) (internal quotation marks omitted). The purpose of front pay is to help make the discharged employee whole. <u>Whittlesey v. Union Carbide Corp.</u>, 742 F.2d 724, 729 (2d Cir. 1984). However, Ms. Clark's back pay award implicitly assumes that she would have remained employed by Gotham for more than two and one-half years after the date she was terminated. Therefore, that award adequately redresses the loss that Ms. Clark is reasonably likely to have suffered. <u>See Chisholm</u>

v. Memorial Sloane-Kettering Cancer Center et al., 824 F. Supp. 2d
573, 577-78 (S.D.N.Y. 2011) (reducing front pay award where back
pay award had sufficiently compensated plaintiff).

Furthermore, before being awarded front pay, "a claimant is
required to 'use reasonable diligence in finding other suitable
employment.'" Padilla v. Metro-North Commuter Railroad, 92 F.3d
117, 125 (2d Cir. 1996) (emphasis omitted) (quoting Ford Motor Co.
v. EEOC, 458 U.S. 219, 231 (1982)).  Failure to mitigate will
"limit the employer's liability for front pay." See Arbercheski v.
Oracle Corp., 650 F. Supp. 2d 309, 313-14 (S.D.N.Y. 2009). Without
evidence of any current to find comparable work, an award of front
pay would be speculative. See Greenbaum v. Svenska Handelsbanken,
N.Y., 979 F. Supp. 973, 988 n.5 (S.D.N.Y. 1997) (declining to award
front pay in light of plaintiff securing comparable employment,
even though she was compensated at lower salary); Rivera v.
Baccarat, Inc., 34 F. Supp. 2d 870, 878 (S.D.N.Y. 1999) (holding
that it would be inequitable to award plaintiff front pay when she
had demonstrated no effort to mitigate damages).  Here, Ms. Clark
proffered no evidence of present attempts to secure employment.

Finally, when a plaintiff willfully leaves comparable
employment due to a change in personal circumstances, front pay is
not warranted.  For example, in Mugavero v. Arms Acres, Inc., 680
F. Supp. 2d 544, 578 (S.D.N.Y. 2010), the court held that the

10

plaintiff was not entitled to lost wages when she voluntarily left comparable employment for personal reasons, such as spending time with her sister.  Similarly, in <u>Greenway v. Buffalo Hilton Hotel</u>, 143 F.3d 47, 54 (2d Cir. 1998), the court held that a terminated employee who entered a training program rather than seeking comparable employment did "not fulfill his obligation to mitigate." Ms. Clark made the choice to care for her family rather than to secure other work.  Accordingly, she is not entitled to front pay.

### 3. <u>Punitive Damages</u>

In order to recover punitive damages under the NYCHRL, the plaintiff must show either that (1) the employer's conduct was motivated by malice or reckless disregard for the plaintiff's federally protected rights; or (2) that the employer's acts were so "'egregious or outrageous,'" that one could infer the "requisite evil motive."  <u>See</u> <u>Becerril</u>, 2009 WL 2611950, at *7 (quoting <u>Farias</u>, 259 F.3d at 101-02).

An award of punitive damages is not warranted here.  That Mr. Coffee raised his voice at Ms. Clark after being told that it made her anxious does not support a finding that he acted with "malice" or with "reckless disregard" for her federally protected rights. <u>See</u> <u>Weissman v. Dawn Joy Fashions, Inc.</u>, 214 F.3d 224, 236 (holding that employer who terminated plaintiff after plaintiff had heart attack "supports a finding of discrimination, [but] does not

support a finding that [the defendant] discriminated 'in the face of a perceived risk that its actions [would] violate federal law'") (quoting Kolstad v. American Dental Association, 527 U.S. 526, 536 (1999)).

Nor was Mr. Coffee's conduct "egregious" enough to support punitive damages. During the inquest, Ms. Clark offered conclusory statements regarding her psychological condition, testifying that "it was very stressful to be around [Mr. Coffee]," as he "had a high level of anxiety . . . and he tended to communicate by yelling and . . . being very negative in his comments." (Tr. at 19); see Trivedi v. Cooper, No. 95 Civ. 2075, 1996 WL 724743, at *9 (S.D.N.Y. Dec. 17, 1996) (reducing mental anguish award where there was no evidence of physical manifestations of distress and claim rested on solely conclusory statements). Ms. Clark did not provide any objective evidence or details of her psychological injury. While Mr. Coffee's inappropriate comments provide a basis for an inference of discriminatory animus, his conduct does not rise to the level of reprehensibility that would justify punitive damages.

   D. Attorneys' Fees and Costs

A prevailing plaintiff may be awarded reasonable attorneys' fees and costs under the NYCHRL. N.Y.C. Admin. Code § 8-502(f).

Plaintiff's counsel requests $56,172.00 in fees and $873.97[5] in costs for the work performed and expenses incurred.  In awarding fees under the NYCHRL, courts apply the same analytical framework used in federal civil rights cases.  Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 297 (2012) (citing McGrath v. Toys "R" Us, Inc., 3 N.Y.3d 421, 426, 429, 788 N.Y.S. 2d 281, 282, 284 (2004)).

Accordingly, the Court must undertake the "lodestar" inquiry. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, __, 130 S. Ct. 1662, 1669 (2010).  The lodestar figure is calculated "by multiplying the prevailing billing rates by the hours reasonably expended on successful claims." Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The lodestar figure represents a presumptively reasonable fee, Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008), as it takes into account "'most, if not all, of the relevant factors constituting a "reasonable" attorney's fee,'" Perdue, 559 U.S. at __, 130 S. Ct.

---

[5] Plaintiff's counsel inadvertently overlooked one FedEx cost, which raises the total costs to $ 905.67.  (See Custom Transaction Detail Report ("Costs Report"), attached as Exh. B to Declaration of Jason L. Solotaroff dated Jan. 19, 2013 ("Solotaroff Decl.")).  The date on the Solotaroff Declaration appears to be erroneous, as the declaration itself claims fees through June 19, 2013. (Solotaroff Decl., ¶ 2).

at 1673 (quoting <u>Pennsylvania v. Delaware Valley Citizens' Council</u> <u>for Clean Air</u>, 478 U.S. 546, 566 (1986)).  For example, the novelty and complexity of a case will be subsumed in the determination of the reasonable number of hours spent, and the quality of an attorney's performance will generally be reflected in the reasonable hourly rate.  <u>Perdue</u>, 559 U.S. at __, 130 S.Ct. at 1673. Therefore, adjustments to the lodestar figure are rare.  <u>Id.</u>

    1. <u>Reasonable Rates</u>

Courts base the reasonable rate for a given attorney on "the prevailing rates in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  <u>Hugee</u>, 852 F. Supp. 2d at 298 (internal quotation marks and citations omitted).  Given the fact that this case was "relatively straightforward" and "did not involve multiple parties, class allegations, unique claims, or other characteristics that would tend to require counsel to charge premium rates in order to take the case on," <u>Rozell v. Ross-Holst</u>, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008), the rates requested by plaintiff's counsel are not warranted.  Furthermore, because this was a default action, many of the plaintiff's claims were left unchallenged.  <u>See</u> <u>Siracuse v.</u> <u>Program for the Development of Human Potential</u>, No. 07 CV 2205, 2012 WL 1624291, at * 28 (E.D.N.Y. April 30, 2012) (holding that lower rates are warranted in default judgment matters, given that

plaintiffs' claims in these cases are unchallenged); see also Becerril, 2009 WL 2611950, at *8-9 (holding that lack of unusual factual or legal issues and unopposed discrimination claim warranted some reduction in rates).

a. Jason Solotaroff

Mr. Solotaroff, a founding partner with more than fifteen years of experience handling employment disputes, seeks fees at the rate of $660 per hour. (Solotaroff Decl., ¶¶ 35, 44). This rate exceeds rates regularly approved in the Southern District of New York for similar work and is unreasonable. See, e.g., Siracuse, 2012 WL 1624291, at *26-30 (founding partner and owner of prominent New York employment law firm asserts that rate of $550 per hour is in line with rates charged in Southern District of New York in 2012). While some courts have awarded rates in the range that Mr. Solotaroff is requesting, see Rozell, 576 F. Supp. 2d at 546 (awarding $600 per hour for partner who oversaw employment discrimination case), Mr. Solotaroff's firm is not comparable in size or geographic reach.[6] See Cioffi v. New York Community Bank,

---

[6] For example, Outten & Golden LLP, the firm awarded fees in Rozell, employs more than thirty attorneys, see Outten & Golden Attorney Bios, available at http://www.outtengolden.com/ (follow "our team" hyperlink; then follow "attorney bios" hyperlink) (last visited July 31, 2013), as opposed to Giskan Solotaroff Anderson & Stewart LLP ("Giskan Solotaroff"), which employs seven attorneys, see Giskan Solotaroff Anderson & Stewart Attorney Profiles, available at http://www.gslawny.com/lawyer-attorney-1014560.html (last visited July 31, 2013). Outten & Golden's founding partner,

465 F. Supp. 2d 202, 219 (E.D.N.Y. 2006) (holding that firm's size may be considered when determining reasonable hourly rate).  Mr. Solotaroff has provided no evidence that he has been paid $660 per hour in the past, nor has he provided an expert affidavit from someone familiar with the area of employment law supporting such a rate.  Therefore, I find that $500.00 per hour is a more reasonable rate.

### b. O. Iliana Konidaris

Mr. Solotaroff requests a rate of $325.00 per hour for Ms. Konidaris, stating that this is her current hourly rate. (Solotaroff Decl., ¶ 38).  Ms. Konidaris graduated from law school in 2009 and became associated with Giskan Solotaroff in March 2010. (Solotaroff Decl., ¶ 38).  She started working on this matter in 2011.  (Solotaroff Decl., ¶ 4).

While plaintiff's counsel cite decisions to support Ms. Konidaris' hourly rate, the cases they allude to are either class actions (which are more complex) or have been litigated by attorneys from much larger firms.  (Memorandum of Law in Support of

---

Wayne N. Outten, has had more than thirty years of experience in employment law. Outten & Golden, Wayne N. Outten Attorney Bio, available at http://www.outtengolden.com/lawyer-attorney/wayne-n-outten (last visited July 31, 2013).  The firm also represents clients internationally through its offices in Manhattan and Chicago.  Outten & Golden, About the Firm, available at http://www.outtengolden.com/ (last visited July 31, 2013).

Plaintiff Kali Clark's Motion for Attorneys' Fees and Costs at 4-5).[7]  Furthermore, recent opinions from the Southern District of New York have determined that reasonable hourly rates in this district are approximately "'$200-$350 [per hour for associates], with average awards increasing over time,' [] with rates on the higher end of this spectrum 'reserved for extraordinary attorneys held in unusually high regard in the legal community.'"  Chen v. TYT East Corp., No. 10 Civ. 5288, 2013 WL 1903735, at *2 (S.D.N.Y. May 8, 2013) (quoting Torres v. Gristede's Operating Corp., No. 04 Civ. 3316, 2012 WL 3878144, at *3 (S.D.N.Y. Aug. 6, 2012)); see also Saunders, 2009 WL 4729948, at *4 (awarding hourly rate of $300 for associate who had graduated law school in 2001, and $275 for associates who had graduated in 2005); DeCurtis v. Upward Bound International, Inc., 2011 WL 4549412, at *7-8 (S.D.N.Y. Sept. 27, 2011).  DeCurtis is instructive here.  The plaintiff in that case was represented by Vladeck, Waldman, Elias & Engelhard, P.C., which, like Giskan Solotaroff, is a Manhattan employment litigation

---

[7]  For example, plaintiff's counsel cite Amaprop Ltd. v. Indiabulls Financial Services Ltd., No. 10 Civ. 1853, 2011 WL 1002439, at *4-5 (S.D.N.Y. March 16, 2011), to establish that mid-level associates charge up to $392/hour.  However, that was a commercial arbitration case and therefore relates to rates in a different market.  Moreover, the firm requesting fees was significantly larger than Giskan Solotaroff, having 25 offices across the globe.  See Orrick, About Us, available at http://www.orrick.com/About/Pages/default.aspx.

firm employing fewer than 15 attorneys.[8]  The court awarded $275 per hour to an associate who, like Ms. Konidaris, had graduated from law school four and one-half years before litigating the matter.  Id.  The requested rate of $325 per hour for an attorney four and one-half years out of law school is higher than the market rate for employment litigation.  Accordingly, Ms. Konidaris' rate is adjusted to a more reasonable $275 per hour.

Finally, plaintiff's counsel requests compensation for 0.8 hours of travel time to and from the Courthouse for the inquest.  Because travel time is generally compensated at "fifty percent of [the attorney's] hourly rates," Williams v. NYC Housing Authority, 975 F. Supp 317, 324 (S.D.N.Y. 1997), the 0.8 hours spent in travel by Ms. Konidaris will be compensated at $137.50 per hour.  (See Time by Job Detail dated June 18, 2013 ("Time Records"), attached as Exh. A to Solotaroff Decl., at 7).

### c. Paralegal Fees

Similarly, the request for paralegal fees at the rate of $175-185 per hour is higher than the market.  Courts have generally found that paralegals should be awarded $100 per hour.  See Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011)

---

[8]  Vladeck, Waldman, Elias & Engelhard, P.C., Attorney Profiles, available at http://www.vladeck.com/attorneys/ (last visited Aug. 1, 2013).

(awarding $100 per hour for paralegals who worked at a law firm similar in size to Giskan Solotaroff); see also DeCurtis, 2011 WL 4549412, at *8 (same); Gurung v. Malhotra, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) (awarding $100 per hour for paralegals at Gibson Dunn & Crutcher LLP). There is no reason to deviate from the market rate for the services of comparable paralegals. Therefore, the paralegals will be awarded $100 per hour.

2. Reasonable Hours

Counsel have submitted contemporaneous time records, as required in this Circuit. See New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). The law is clear that in reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley, 416 U.S. at 433-35). In this case, the amount of time spent was reasonable, with the exception of the five hours devoted by Ms. Konidaris to obtaining a certificate of default and certificates of service. (See Time Records at 7). Given that this is a clerical task, Ms. Konidaris should be compensated at the rate for paralegal employees. See Cowan v. Ernest Codelia, P.C., No. 98 Civ. 5548, 2001 WL 30501, at *9 (S.D.N.Y. Jan. 12, 2001) (applying $50 per hour rate for clerical task performed by attorney). Therefore, Ms. Konidaris should be

19

compensated at a rate of $100 per hour for those five hours.

> 3. <u>Calculation of the Lodestar</u>

In accordance with these findings, the lodestar should be recalculated as follows:

| Attorney | Hours Sought | Hours Allowed | Hourly Rate Sought | Hourly Rate Allowed | Total |
|---|---|---|---|---|---|
| Jason L. Solotaroff | 21.4 | 21.4 | $660.00 | $500.00 | $10,700.00 |
| O. Iliana Konidaris | 123 | 117.2 | $325.00 | $275.00 | $32,230.00 |
| (Adjusted rate for Certificates of Default & Service) | | 5 | $325.00 | $100.00 | $500.00 |
| (Adjusted rate for travel time) | | 0.8 | $325.00 | $137.50 | $110.00 |
| **Total** | | | | | **$43,540.00** |

| Paralegal | Hours Sought | Hourly Rate Sought | Hourly Rate Allowed | Total |
|---|---|---|---|---|
| Nora Machuga | 6.8 | $175.00 | $100.00 | $680.00 |
| Shira Burton | 3.3 | $185.00 | $100.00 | $330.00 |
| Dustin Brockner | 1.0 | $185.00 | $100.00 | $100.00 |
| Hali Thurber | 0.3 | $175.00 | $100.00 | $30.00 |
| Kate Redburn | 0.2 | $175.00 | $100.00 | $20.00 |
| **Total** | | | | **$1,160.00** |

4. <u>Costs</u>

Finally, plaintiff's counsel have documented costs totaling $905.67, consisting of FedEx fees, filing fees, computer-assisted research costs, mediation fees, messenger service fees, and postage. (Pl. Memo. at 11; Costs Report). The costs requested are reasonable, and plaintiff's counsel is therefore entitled to $905.67.

<u>Conclusion</u>

For the reasons set forth above, I recommend that judgment be entered in favor of the plaintiff and against Gotham Lasik, PLLC, for $72,203.17 in back pay, together with attorneys' fees and costs of $45,580.94 for a total of $117,784.10. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lorna G. Schofield, Room 201, 40 Foley Square, New York, New York, 10007 and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            August 2, 2013


Copies mailed this date:

Jason L. Solotaroff, Esq.
Olympias I. Konidaris, Esq.
Giskan Solotaroff Anderson & Stewart LLP
11 Broadway, Suite 2150
New York, New York  10004

Gotham Lasik, PLLC
346 W. 57th Street
New York, NY 10019